The next case is Commander Havens v. United States, Appeal 5039. Mr. Wells. Good morning, Your Honor. It still is morning, but only barely. Welcome to the Court. You've got about two minutes, I believe. If it may please the Court, I'd like to reserve five minutes. Fine. I don't know if I may begin. I think a couple of salient issues here. One, I think, what is a retiring board? A board for corrections of military records, or in this case, naval records. Or is a retiring board, by definition, a physical evaluation board? And we would submit it to the latter. I think the other salient issue here deals with Martinez and the applicability of Martinez to a separation rather than just a mere discharge or a complete discharge. If I can address those issues in order. In this particular case, Commander Havens was denied by a physical evaluation board in 2002. That was the first time his case went up before a physical evaluation board. We agree that it had been submitted to the correction boards. But correction boards are not retiring boards. There's case law to support that. And I think if you look at how the boards are made up, it sheds a lot of light on this. Was that point briefed, Mr. Wells? That it's not a retiring board? Yes, sir. Both the opening and the reply brief. It was discussed. To me, the first argument was basically we should overrule Martinez. Well, that was the first part of the argument. I'm taking reverse order of the way it was briefed. I'm just taking the order in which I presented it. So, Martinez, that is the second issue in the case. Yes, sir. I don't see it, but I read the brief earlier, but I don't see it now. Go ahead. The starting. Don't you cite Chambers on that saying that, as I understood it, Martinez doesn't apply to disability retirement claims? That's right, Your Honor. But doesn't Chambers say that the decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations? And I think that's on page perhaps 1224 of the case. And if that's true, doesn't the statute of limitations apply? It only applies starting in 2002, sir, because that was the first statutory retirement board. It's our position that a correction board is not a retirement board. Didn't he ask, in January of 2001, the Physical Evaluation Board to evaluate him? Yes. And then in July of 2001, didn't they find him not fit for duty, and didn't they also find disability not a proximate result to performing military duties? Doesn't that start the limitations there in July of 2001? He waits until November 7, 2007, to file a suit. More than six years have passed. Even if we follow Chambers like you asked, don't we reach the same results? Not quite, Your Honor, because actually he initially disagreed with the results of that board and asked for a formal PEB, which in the Navy, and I realize you've got some Army background, Your Honor, they work pretty similar. You can ask for a formal PEB to evaluate him. Part of our issues dealt with the effectiveness of the counsel he got during that process. My understanding of the record, correct me if I'm wrong, is that he asked the PEB to evaluate him, and that was in January he made that request. That's right. And they evaluated him, and then in July told him, or made a finding, not fit for duty, disability, not proximate result. So that's the findings of the PEB. Why doesn't the statute start then? Because, Your Honor, he did ask for the formal board, which is part of the same process. Are you saying that that is not the formal board? No, sir. The formal board is actually a formal hearing type board. What he had was basically a paper board where they sent the package up and the three officers met. Is that not a statutorily authorized board? Yes, sir, but it's still part of the same process. But the formal board is part of the same process. It's in the same way. Well, it could be an appeal, but that isn't what Chambers said. It's the first board. Was that not the first board? No, sir. Was it not statutorily authorized? It was the first board, but the board process continued. In the same way, if we were to ask for a request for a reconsideration on Bonk or whatever, if you were to rule against us, that would toll any statute of limitations going to when I defile my petition for cert, for certiorari. What's the authority for saying that the statute is told when you go through the more formal board process as opposed to the initial informal paper process? Because it's all part of the same process. It's different steps in the same way. That's just a lawyer argument. What statute or regulation or case says that the clock stops until the second stage of board review is concluded? Well, because the decision is not final until such time as the board is final. As far as I know, there's nothing which specifically asks that question. Quite honestly, I didn't research it because I never thought about that one. It's been my experience, both in the military and in the law, that when you're continuing along on the same process, the statute doesn't start until that process is complete. That may often be true, but my recollection is that with regard to statute of limitation problems in this military context, that it's the other way around, that there is no tolling while you pursue other available remedies. But it's not a different remedy, Your Honor. It's part of the same remedy. It's the same remedy as long as you stay with that same board. Well, I stand corrected. It's the same remedy you're seeking, but it's in a different form. No, sir, it's the same form. It's still the Navy's Physical Evaluation Board, as set down in the Psych-Nav Instruction 1850.4 series, which sets up several steps in the disability retirement system. The first step is, of course, is often a medical board, which is usually one officer. The second step gets to where they make a submission to a board of officers. It's usually two line officers, a Navy and Marine officer, and a medical officer in the Navy. Once it goes there, they make, I guess, what you would call a preliminary finding. It comes back to the individual who can accept or reject that finding. If he accepts the finding, the process ends there. If he rejects the finding, then it goes on to a formal hearing before the Physical Evaluation Board. That's what happened here, is he rejected the finding, asked for a formal hearing. In fact, he then turned around, through other issues that aren't germane to the law and the statute of limitations, made a decision to eventually accept the findings. Then the final decision came out on January 2, 2002. I think that's the important thing, Judge Clark, is kind of where you're going. Everything here, up until then, is a preliminary decision. It's the final decision that came out, which ends the Physical Evaluation Board process. At that point, it's final. How do I get around, we get around, chambers, which you want us to rely on, that says the decision by the first statutorily authorized board, and the statute, which sets out the statute of limitations, says six years, and nowhere in there, in the case of the statute, is there, after all, internal appeals in the military are exhausted, or so on and so forth. How do we get around that very clear language? Do we modify chambers now? No, not at all, Judge, because, first of all, it's not an internal appeal. It's the issue of... Well, internal in the sense of being in the military, as opposed to going to the, bringing suit. It's the same thing as, it's a preliminary decision. The final decision, the decision of the Physical Evaluation Board, did not come until January 2. If you'll notice in there, they actually made a couple of decisions. Even accepting that the decision was not truly final until 02, that's not responsive to Judge Clark's question that the case law, chambers specifically, seems to focus on when the first board is finished, not when the later board is finished. Yes, sir, I think it does, because it's still all one board. It's not like you have a hierarchy of boards where you go to this one, and then there's an appellate. For example, it's not like if there's a court-martial, you go to a higher court. I'm not disagreeing with you on the description of the sequential steps in the military system or the structure of it. I'm trying to get you to focus on the case law that Judge Clark's question relies on. How do we get around the language in chambers which makes it sound like it's the very first decision of the very first authority that triggers the running of the six-year statute of limitations? Because, Your Honor, again, it's not a final one. One of the things, if you look at the complaint, they actually came out... But chambers doesn't say when you have a final decision. It says when you have a decision of the first board. Well, perhaps, Your Honor, this would be an opportunity to clarify that point. Well, Judge Clark asked whether you're, in effect, requesting that we modify or perhaps even overrule chambers. And I thought you were saying, no, chambers helped me. I like chambers. But there's that language in chambers that seems unfriendly to you. So I don't know why you like it. I don't think we were talking... I think we were talking in opposite interpretations. The way I interpret chambers, and obviously Judge Clark and I have a disagreement on this, is it probably doesn't need modification. Judge Clark, being smarter than I am, may have found some reason in there where it does. So certainly we're not going to object to any kind of modification, which clarifies it to say the final decision of the statutory returning board. Is it hard of your case to say that the second trio of officers that reviewed this case, even though they're three different individuals, is really just the exact same as the first three officers who did what you're calling the preliminary work, the paper review? First of all, I'm not sure there is three different officers. It may be the same ones. I just don't know. I'm not sure how they actually assigned that within the Navy personnel boards. The important thing isn't the identity of the three or the six. The important thing is you're saying that those two reviews are really one and the same, and that there's no result until the second stage has occurred, whether it's the same three officers or different three officers. I'm saying until the final decision is final. Because in this particular case, there were actually three decisions. If you look at the complaint, and this is Joint Appendix 19, paragraph 63, it talks about June 2001, the plaintiff was found fit for duty. A month later, they reversed. You win under the statute of limitations if we accept the second of the three. Actually, what we want you to do is, for statute of limitations purposes, take the third of the three, the final one. Let's hear from the government. We'll give you back some rebuttal time when they're finished. Okay. Can I move on to the Martinez issue, sir? Quickly. Very quickly. I think the issue is separation and discharge. The reserves, I spent 22 years in the Navy. I commanded reserve centers for six of those years. It's different. Separation means you leave active duty for a period of time. You can go right back on two weeks later. It happens often. Okay. Discharge is when I retired, I got a discharge certificate. So Martinez was a discharge case? Martinez actually addressed separation and discharge. My point is, Martinez was wrongly decided. It hung on 37-204 and said— You're aware that this panel cannot overrule Martinez? Yes, Your Honor. I said that in my brief, that I believe that we were going to have to have an en banc on that issue. And I understand possibly the best that you all could do would be to recommend an en banc. But in this particular case, 37-204G applies. 37-204G says that if you have a reservist that was injured or had an illness on active duty and should have been handled while he was on active duty, which is the crux of our complaint, then he is actually eligible for pay. It's an issue that was not present in the Martinez case. Your Honor, I've probably spoken longer than you want me to, so I reserve the rest of my time and any other time you'd be so gracious as to give me. Thank you. Counsel for the Government? Chief Judge Michel, may it please the Court. Commander Havens filed his claims five years too late. The trial court applied settled circuit precedent in reaching the conclusion that Commander Havens' claims— Could he have filed right after that first PEB, the one we were discussing here? Counsel was talking about the need to go through, in effect, the review. And I'm looking at the one that was in— They come out with a decision in July 2001. What would have happened if he had filed right then? Would you have come in and said, wait a minute, that's not final? You can't bring it? Your Honor, it depends on the service member's decision to contest those findings or not. As I understand it, in the regulations, there's a procedure for having a hearing before an informal PEB, and if the result of that informal PEB is unfavorable to the service member, the service member can then take the matter to a formal PEB, much like if we were— Well, let's take a look at this. I mean, and I'm reading the record. Maybe I missed something. Plaintiff asked for a Physical Evaluation Board to evaluate. The way I read the record, that happened in January of 2001. In July 2001, the board says, not fit for duty, disability, not approximate result of performing military duties. What happens if, right then, he goes ahead and files his case, as opposed to waiting? I mean, right now you're saying, okay, such limitation bars you, and I guess I tend to agree on those dates. But if you're telling me that, no, he couldn't have filed right then, he had to go through this process that took him into the next year. He could have filed right then. He could have filed this case right then. Your Honor, let me try to clarify this, because I think we—there are two issues that are being conflated here. Number one is when does the claim accrue, which is a very important issue in this appeal. But I understand that there are questions about the July 2001 informal PEB decision. The service member, Commander Havens, could have accepted the informal PEB findings as final as to him and brought a suit at that time, or brought a petition before the Corrections Board at that time to challenge— Okay, so is that the first statutorily authorized board that Chambers talks about? No, Your Honor. Oh, okay. Well, what is? The first statutorily authorized board to hear Commander Havens' petition was the BCNR in this case. The BCNR rejected the disability claim asserted by Commander Havens three separate times prior to November of 2009. What's the significance of three versus one? What's the difference in that? Your Honor, I'd be happy to focus on the first one. The point is just that this claim is time-barred three times over before we even get to the July PEB or the January 2002 formal PEB decision. You have a decision by the BCNR in June of 2000 that ruled upon Commander Havens' petition, which claimed that he sought disability retirement. He claimed he was improperly released without a medical board. And the BCNR ruled in June of 2000 that Commander Havens' fitness was not in question, and therefore he had no entitlement to claim a medical board, much less disability pay. Then— Well, let me stop you. Now, if I understand your position, the six-year clock starts running right then. Actually, Your Honor, it started even before then. The allegations— Don't hold out on us. Tell us when it started, and then we'll try to do the math. Surely. And I apologize, Your Honor, I'm trying to be responsive to the questions about what happened in 2001-2002. But the disability claim is time-barred because it accrued upon the release from active duty in 1996. And the reason for that— Didn't he go into the Reserves in 1996? That's right, Your Honor, but he was released—well, he was in the Reserves the entire time. He was in the Reserves on active duty from 1980 until 1996. And then Commander Havens' status changed in 1996, and he went on inactive duty, also in the Reserves, for an additional period of time until his retirement in 2000. Was that active or was that with drills and two-week tours? My understanding, Your Honor, from the complaint is that there was annual duty training that Commander Havens performed for two weeks, one year. The drills that an inactive-duty service member in the Reserves is required to perform is not a form of active duty. The one weekend a month that Reservists perform, that is inactive training duty. The two weeks a year is a form of—it's a special temporary form of active duty. But for the most part, from 1996 onward, Commander Havens was on inactive duty. And what happened before his separation from active duty is he— You can be accumulating points with education and so forth during that time towards your retirement, can't you? That inactive—I mean, I'm dredging from a long time ago in a different branch, but he can be accumulating points, maybe not very quickly, but maybe he's taking correspondence classes. Maybe he's performing occasional duty, but not many points. Maybe not good years, but something. That's correct, Your Honor. But the issue in this case is not the accumulation of retirement credit. The issue in this case is the disability claim for an alleged disability diagnosed in 1995, as to which the service member, Commander Havens, twice alleges that he requested a board prior to his separation in 1996. And he alleges he got the diagnosis, he alleges. He asked for the medical board twice, and he alleges that he never got one and was released from active duty in 1996. All of those factors line up right under the Freedman Rule, which says that a claim for disability accrues upon the denial of a service member's request for a medical board. So the request for a medical board is made in early 1996. The service member knows that he did not get the medical board prior to his separation from active duty. He knows that the disability that is alleged to exist was diagnosed in 1995. So all of the information that Commander Havens would have to have in order to bring a cause of action was available to him, and, in fact, he had that information in 1996. You say he knows that he didn't get a board. Of course, that's true in a commonsensical way because no proceedings ever occurred. But was he notified that his request for a board was being denied? Your Honor, the allegation in paragraph 26 of the complaint is that Commander Havens was notified that the commanding officer at the medical facility did not want to do a medical board. So he was notified in some fashion. It's written in the passive voice, so we don't know who notified Commander Havens, but that issue is not in dispute. What happens if I'm the service member and I ask for a board and I never get any answer? Does that hold open the time frame until I do get an answer? No, Your Honor, because the medical board would have to be convened prior to separation from active duty. So then the latest date that would trigger the accrual would be the separation from active duty. If I haven't gotten a board by then, then that separation action triggers the six-year statute. That's exactly right, and that's the Friedman rule. But let's just assume for a moment that, because we don't have any record one way or the other of a request for a medical board or a denial of a request for a medical board. That all comes from the allegations in the complaint. But even if we were to assume that Commander Havens hadn't pled himself out of court with those allegations and his Friedman problem, he would still have a Chambers problem. Under the decision in Chambers, the first statutorily authorized board to hear the matter, which rules on it. A board that isn't just self-appointing and acting with no authority? What does it really mean? Statutorily authorized to do what? To hear the petition for disability benefits, as long as the board had jurisdiction. Is the correction board a board that's authorized to hear medical problems? Indeed, Your Honor. Section 1552 of Title X, which authorizes the establishment of corrections boards, specifically states that the secretary concerned may pay from applicable current appropriations a claim for the loss of pay, allowances, compensation, or other pecuniary benefits. So a claim for disability benefits is certainly something within the jurisdiction of the BCNR. In fact, the court in Chambers expressly held that it was the corrections board's decision in that case that was the triggering event for purposes of the statute of limitations. So statutorily authorized means a given power by a statute to adjudicate the sort of claim that's in issue? Indeed, Your Honor. And just help me out. Which is the one that's your position is that first statutorily authorized board that we should be looking at for calculation of statute of limitations, and when did they meet? June 2000, Your Honor. It's the first decision of the BCNR. And that's when they denied the November 1999 application? That's right, Your Honor, and it's in the record. I've got a whole list of them. I want to know which one you're picking. Well, Your Honor, certainly the first BCNR decision. Okay. And I believe that was the trial court in its analysis found that under Commander Haven's own allegations, he did have a Freedman problem because he had asked for a board and didn't get one. So under Freedman, the statute of limitations would begin to run upon release from active duty. But even if he hadn't made that allegation, the June 2000 BCNR decision is insurmountable. All right. Well, I think your case is clearly stated. Let's hear from Mr. Wells on remodel. Thank you. Thank you. Thank you, Your Honor. If I may address some of the issues that were raised. First of all, Judge Clark's question, could he, in July 2001, have filed a suit right then? What the government said, well, if he had accepted the findings, yes, he could. However, it should be noted that he did not accept the findings of the board until November 8, 2001. The suit was filed on November 7, 2007. Within the six years, the statute of limitations is very close, but still within. The government has repeatedly said the Board for Correction of Records is a statutory retiring board. It is not. I believe, I'm misquoting Judge Michel, but I don't mean to. But my understanding is that that only applied for a correction board if a statutory retiring board had not been requested. And if you look, and I'll refer you to page 3 of my reply brief, I listed a number of cases. Van Allen v. United States, Estampados v. United States, which basically says the same thing, is if there's no retiring board, then fine, the correction board counts. But if they go to a retiring board, that trumps it. And there is nothing in 10 U.S.C. 1552 that allows for disability retirement. It allows for correction of records, allows for a lot of things, but nothing for that. In fact, 10 U.S.C. 1554 probably is a permissive disability board, but that doesn't apply to the Board for Correction of Records. You know, you've got three civilians sitting there on a record corrections board against a military physical examination board. You've got a medical doctor and two active duty line officers. The third thing that I wanted to hit was the Med Board denied in 1996. There is no denial on the record, nothing that I've been able to find. Maybe a piece of paper exists. I haven't seen it. But he asked for a medical board. The fact is they never got around to it. They didn't want to get around to it. They stonewalled. That's not a denial. But more importantly, DOD Direct 1332.38 says that even if you transfer into the reserves, and this is quoted and referred to on page 5 of my brief, even if you go into the reserves, you're protected because it's determined that you need a physical evaluation board. You go back and treat you just like you're on active duty. And I think that in this case, this directive also provides another exception to Martinez, as well as to the- What was in your brief? Yes, sir. And this one dealt with page 5 in my brief, actually, is when I quoted the DOD directive. I believe it's also in the Secretary of the Navy Instruction 1770.3 Bravo, which is also quoted page 5 of the brief. We've long since exhausted your rebuttal time. I think we have a series of points well in mind that you've made, and we can refresh our memory from your brief. Thank you, Your Honor. We'll take the appeal on advisement. We thank both counsels. Thank you, Your Honor.